IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTINA ROSSI,<br><br>        Plaintiff,<br><br>v.<br><br>UNIVERSITY OF UTAH, a Utah state educational institution; F. EDWARD DUDEK, an individual, in his official and individual capacities; KRISTIN A. KEEFE, an individual, in her official and individual capacities; JOHN A. WHITE, an individual, in his official and individual capacities; JEFFREY J. EKSTRAND, an individual, in his official and individual capacities, BRADLEY GREGER, an individual, in his official and individual capacities; JEFFERY R. BOTKIN, an individual, in his official and individual capacities; and DOES 1 through 25, inclusive,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cv-00767<br><br>Judge Clark Waddoups |

        Plaintiff Christina Rossi was dismissed from the University of Utah's Ph.D. program in Neuroscience in January 2014. Ms. Rossi challenges the dismissal, which followed over five years of graduate work in the program, as a violation of her procedural and substantive due process rights under federal law and a violation of her rights under various state laws. This matter comes before the court on defendants' Motion to Dismiss the University of Utah and the Faculty Defendants in their Official Capacity [Dkt. No. 28], and defendants' Motion to Dismiss

Faculty Defendants in their Individual Capacities [Dkt. No. 29]. The court has carefully reviewed the parties' motions and memoranda, oral arguments, and the relevant law. For the reasons below, the court GRANTS in part and DENIES in part both motions.

## BACKGROUND

Ms. Rossi's Amended Complaint consists of 303 paragraphs of carefully pled factual allegations asserting eight separate causes of action. Her first and second claims for procedural and substantive due process violations under 42 U.S.C. § 1983 are brought solely against the faculty defendants in their individual capacities for damages and in their official capacities for injunctive relief. State law claims of negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing are brought solely against the University of Utah. Ms. Rossi also brings declaratory relief and injunctive relief claims, state law defamation claims against defendant Dr. Dudek individually, and a state law breach of fiduciary duty claim against both the University of Utah and defendant Dr. Dudek individually.

## ANALYSIS

### I. Motion to Dismiss Legal Standard

To survive a motion to dismiss, plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (internal punctuation omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). The court must "accept all the well-pleaded allegations of the complaint as true and must

construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

The court first considers defendants' arguments that the Eleventh Amendment bars Ms. Rossi's claims against the University and the faculty defendants and finds that the claims against the University of Utah are barred. Next, defendants' arguments that the faculty defendants are entitled to qualified immunity are considered and rejected. The court then determines that Ms. Rossi's injunctive relief claim is proper, but dismisses her declaratory relief claim. Thereafter, the court determines that there is an insufficient affirmative link to sustain Ms. Rossi's claims against Dr. Greger in his individual and official capacity, and against Dr. Ekstrand in his individual capacity. Finally, the court retains Ms. Rossi's defamation claims against Dr. Dudek and dismisses her breach of fiduciary duty claim.

## II. Eleventh Amendment Immunity

### A. University of Utah

Actions in federal court against states and state entities are barred by the Eleventh Amendment to the U.S. Constitution. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The University of Utah is considered an "arm of the state." *Roach v. University of Utah*, 968 F. Supp. 1446, 1450 (D. Utah 1997). Absent a waiver of sovereign immunity, the court cannot exercise its supplemental jurisdiction under 28 U.S.C. § 1367 to address plaintiff's

state law claims against the University of Utah. *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013) ("[S]upplemental jurisdiction under § 1367 does not override the Eleventh Amendment's bar on suing a state in federal court."). There is no substantive allegation of a waiver here. Therefore, the court dismisses all of Ms. Rossi's claims against the University of Utah.

### B. Faculty Defendants in their Official Capacity

Eleventh Amendment immunity applies not only to actions against states and state entities, but also to 42 U.S.C. § 1983 actions for damages brought against state officials in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Nevertheless, when sued for prospective injunctive relief, a "person" who violates federal rights while acting under color of state law, 42 U.S.C. § 1983, can include "a state official in his or her official capacity," and such actions "are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. *See also Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1134 (10th Cir. 2001) ("[T]he Supreme Court made it clear that a private individual may sue a state official for prospective injunctive relief in federal court even if the Eleventh Amendment bars such claims from being brought against the state itself."). Because Ms. Rossi's § 1983 claims against the faculty defendants in their official capacities are only for prospective injunctive relief, the court denies defendants' motion to dismiss them in their official capacities on Eleventh Amendment grounds.

### C. Faculty Defendants in their Individual Capacities

State officials can be sued for damages in their individual capacities pursuant to § 1983. *Cornforth*, 263 F.3d at 1132; *see also Chenault v. Broadbent*, No. 99-NC-133 K, 2000 WL

4

33710850, *2 (D. Utah Oct. 27, 2000) (unpublished) (citation omitted) ("Suits against individual state employees not in their official capacity are not barred by the Eleventh Amendment and may be brought under 42 U.S.C. § 1983 where proper."). Ms. Rossi's § 1983 claims for relief against the faculty defendants in their individual capacities only seek damages. Accordingly, the court denies defendants' motion to dismiss the faculty defendants in their individual capacities on the basis of Eleventh Amendment immunity.

### III. Qualified Immunity

Ms. Rossi's complaint alleges a deprivation of her liberty and/or property interests that implicates the Due Process Clause of the U.S. Constitution. U.S. Const. amend. XIV § 1. The faculty defendants in their individual capacities assert that qualified immunity bars plaintiff from pursuing her 42 U.S.C. § 1983 due process claims against them. State officials are generally shielded from civil damage liability when performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomez v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Ms. Rossi bears the burden of showing that the well-pleaded facts in her complaint allege that defendants (1) violated a constitutional or statutory right (2) that was clearly established at the time of the unlawful conduct. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006). If she fails to meet this burden, defendants are entitled to qualified immunity. The court has discretion to analyze the two prongs of qualified immunity in any order depending on the factual circumstances of the individual case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

5

### A. Ms. Rossi Plausibly Alleged Substantive and Procedural Due Process Violations

The court begins with Ms. Rossi's claim that her dismissal from the Ph.D. program violated her substantive due process rights because defendants arbitrarily responded to her faculty mentor's (Dr. Dudek's) conflict of interest and research misconduct allegations against her. "[I]n order to present a claim of denial of substantive due process by a discharge for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Sipes v. United States*, 744 F.2d 1418, 1420 n.3 (10th Cir. 1984) (internal quotations omitted). The Tenth Circuit has held that individuals have a protected property interest in their enrollment in a program of public education. *See Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975); *Gossett v. Oklahoma ex rel Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001). Similarly, such individuals also have a protected liberty interest against state actors arbitrarily depriving them of their "good name, reputation, honor, or integrity" because it may "interfere with later opportunities for higher education and employment." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Thus, "[t]he Due Process Clause not only provides a procedural safeguard against deprivations of life, liberty, and property but also protects substantive aspects of those interests from unconstitutional restrictions by government." *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) (quoting *Harris v. Blake*, 798 F.2d 419, 424 (10th Cir. 1986).

Here, Ms. Rossi enrolled in the University of Utah's Interdepartmental Program in Neuroscience in 2008. (*Am. Compl.*, ¶¶ 1, 13). Over 300 paragraphs of non-conclusory factual allegations in the complaint paint a detailed picture of an otherwise high-achieving and well-respected graduate student whose research and reputation became tainted by Dr. Dudek's

6

financial and scientific conflict of interest in a wireless device he recommended she use for recording seizure information in experimental mice. (*See Am. Compl.*, Dkt. No. 23). Defendants' motions do not directly address Ms. Rossi's substantive or procedural due process claims about Dr. Dudek's conflict of interest and research misconduct allegations against her. Rather, they essentially defend by asserting that her dismissal was not arbitrary or capricious because it was for substandard academic performance; thus they focus on showing that Ms. Rossi received sufficient procedural due process prior to and/or after her allegedly academic dismissal. Accordingly, the court first addresses Ms. Rossi's procedural due process claims in light of defendants' procedural due process defense to her allegations of a substantive due process violation.

### 1. Procedural Due Process

Defendants argue that Ms. Rossi was entitled to "far less stringent procedural [due process] requirements" before being dismissed for academic reasons than she would have been if she had been dismissed for disciplinary reasons. *Trotter v. Regents of the Univ.*, 219 F.3d 1179, 1184 (10th Cir. 2000), Even if her dismissal was disciplinary, however, defendants argue that Ms. Rossi received all the due process to which she was entitled and thus cannot demonstrate a constitutional violation. [Dkt. No. 29, pp. 6-10].

In support of this argument, defendants selectively cite to paragraphs of the complaint that identify notice and informal hearings provided to address Ms. Rossi's allegedly substandard academic performance: her failed dissertation defense, notice of faculty feedback on the dissertation papers beginning in approximately March 2013, the November 2013 meeting in which her dissertation committee initially informed her of their decision to dismiss her, a

probationary reinstatement letter they gave her two days later, Ms. Rossi's subsequent grievance letter to the University, and the program's final dismissal letter of January 13, 2014. [*Id.*] This notice and informal hearing process, they allege, is comparable to those courts found adequate in other academic and disciplinary dismissal cases, such as *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78 (1978) (medical student dismissed for failure to meet academic standards); *Gaspar*, 513 F.2d 843 (nursing student dismissed for clinical performance deficiencies); *Harris*, 798 F.2d 419 (graduate psychology student dismissed for academic deficiencies); *Halvorson v. Univ. of Utah Sch. of Med.*, 2007 WL 2892633 (D. Utah); *Henderson v. Engstrom*, No. CIV 1O-4116-RAL, 2012 WL 4009108 (D.S.D. Sept. 12, 2012) (graduate student dismissed for academic and disciplinary reasons); and *Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275 (D. Kan. 2014) (law student dismissed for disciplinary reasons).

The court is not persuaded that defendants' analysis is sufficient in this context. First, Ms. Rossi's Amended Complaint, taken as a whole and assumed to be true at this stage of the proceedings, alleges that she was not given pre-dismissal notice or an opportunity to be heard specifically about data falsification or research misconduct claims against her. Second, Ms. Rossi makes factual allegations regarding Dr. Dudek's conflict of interest and research misconduct claims against her that taints the allegedly academic nature of her dismissal that was not at issue in any of the cases cited by defendants. Third, given these allegations, whether Ms. Rossi was dismissed for academic, disciplinary, or other reasons entirely unrelated to Ms. Rossi's performance or character due to Dr. Dudek's conflict of interest cannot be resolved by the court on a motion to dismiss. *See Lee v. Kansas State Univ.*, No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, *8 (D. Kan. June 7, 2013 (unpublished) ("The question of whether the dismissal was

8

academic or disciplinary [or for some other purpose] is a fact question that cannot be resolved on a motion to dismiss.").

At oral argument, the court asked defendants whether Ms. Rossi's substantive claims that her dismissal was tainted by Dr. Dudek's conflict of interest should be heard if she, in fact, received adequate procedural due process. Defendants responded that claims about Dr. Dudek's conflict of interest should not be heard, because adequate procedural due process for an academic dismissal means that there is no constitutional violation. The court disagrees that procedure alone saves defendants from this claim, because notwithstanding notice and hearing, procedural due process has not been validly provided if the decision reached was not the product of "careful and deliberate" professional judgment. *Gossett*, 245 F.3d at 1181-82. Because allegations of Dr. Dudek's conflict of interest taints defendants' claim that the dismissal was academic, the court finds that Ms. Rossi has met her burden to plausibly state a procedural due process violation.

### 2. Substantive Due Process

The court now addresses Ms. Rossi's claim that her substantive due process rights were violated. While the court is conscious of the Supreme Court's reluctance to articulate a general substantive due process right in graduate academic settings, *see Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985), that does not mean there is no right. Rather, the court reviews whether the deprivation is based on a "genuinely academic decision" and only overrides it if "it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225.

Ms. Rossi's complaint alleges that in the final year of her otherwise successful performance in the Ph.D. program, and in the same month (November 2012) that she reported negative seizure data results using the wireless recording device to Dr. Dudek, that he wrote her a letter disclosing his financial and scientific conflict of interest in the device and recommended that another committee member independently review her data to address his conflict of interest. But, he failed to copy that committee member on the conflict of interest letter or ask him to review the data; he also failed to place the conflict of interest letter in Ms. Rossi's student file. Dr. Dudek then allegedly disengaged with Ms. Rossi's preparations to complete her dissertation and prepare her defense. He requested that she revise her dissertation in a manner that may erroneously suggest she had achieved positive seizure data using the device. He ejected her from his research lab two days before she was to defend her dissertation and demanded that the University investigate her for research misconduct (which the University did, and did not find). Dr. Dudek allegedly simultaneously and repeatedly contaminated her reputation for honesty and academic integrity to the members of the dissertation committee who, on the basis of those representations, voted to dismiss her from the program. Then, she alleges that Dr. Dudek used her dissertation data to promote his own interests in the wireless recording device. (*See Am. Compl.*).

Although generally courts defer to a school's decision to dismiss "a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges," *Butler*, 341 F.3d at 1200-01 (citing *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)*, Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998); *Abeyta v. Chama Valley Indep. Sch. Dist.*,

77 F.3d 1253, 1256 (10th Cir. 1996), Ms. Rossi's complaint raises the question of whether the decision to dismiss her was a "careful and deliberate" exercise of professional academic judgment, rather than being motivated by an intent to suppress negative data regarding the conflicted device. *See Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1330 (D. Utah 2008); *Gossett*, 245 F.3d at 1181 ("the notion of judicial deference to academic decisions loses force when, as here, the decision-maker is accused of concealing non-academic or constitutionally impermissible reasons for its action.") (internal punctuation omitted) (citing *Ewing*, 474 U.S. at 225).

At this stage of the proceedings, the court must accept Ms. Rossi's factual allegations as true. Thus, the court finds that Ms. Rossi has met her burden to plausibly allege that her dismissal was an arbitrary deprivation of her property and liberty rights under the Fourteenth Amendment.

### B. Fourteenth Amendment Due Process Protections Were Clearly Established

Having determined that Ms. Rossi has met her burden to plausibly allege defendants' substantive and procedural due process violations, the court now must examine whether there was clearly established law prohibiting the alleged violations at the time they occurred. Generally, a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1308 (10th Cir. 2015). The analysis, however, "involves more than a scavenger hunt for prior cases with precisely the same facts." *Davis v. Clifford,* 2016 U.S. App. LEXIS 10648 (10th Cir. June 13, 2016) (quoting *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016). "The more obviously egregious the

11

conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Davis* at *10.

Ms. Rossi argues that Supreme Court and Tenth Circuit precedent have clearly established that graduate students at public institutions with protected property and liberty interests are due constitutionally sufficient process "*before they are dismissed.*" *Assenov*, 553 F. Supp. 2d at 1328 (emphasis added). This pre-dismissal due process "should be commensurate with the circumstances and severity of the situation." *Id*. In *Gossett*, for example, while the Tenth Circuit acknowledged that courts should "show great respect for the faculty's professional judgment" on a "genuinely academic decision," it held that even if constitutionally adequate notice has been given, due process is not satisfied when the plaintiff has asserted a plausible challenge that the decision itself was not the "product of conscientious and careful deliberation" about academic abilities, but instead was based on "nonacademic or constitutionally impermissible reasons." 245 F.3d at 1181-82.

Similarly, the Supreme Court acknowledges the need to examine faculty decisions that are "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225. Because Ms. Rossi has plausibly alleged that her continued enrollment in the Ph.D. program and her reputation for academic integrity were tainted by Dr. Dudek's conflict of interest and unproven allegations that she falsified her research data, the court finds that clearly established law required defendants to provide constitutionally adequate pre-dismissal notice and a meaningful opportunity to specifically address the conflict of interest and research misconduct allegations.

Additionally, because the dangers of conflicts of interest are well known in academic research fields, at this stage of the proceedings when the court takes the allegations in Ms. Rossi's Amended Complaint as true, the court is not persuaded by defendants' arguments that even if they violated Ms. Rossi's constitutional rights as defined by clearly established law, they were not unreasonable to assume that the notice and hearings they did provide were sufficient in these circumstances. *See Mecham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007). For all of these reasons, the court holds that the faculty defendants in their individual capacities are not eligible for qualified immunity.

## IV. Claims for Injunctive and Declaratory Relief

Ms. Rossi's state law claim for prospective injunctive relief asks the court to "prohibit the University from enforcing its discharge of Christina from the Program" and "require the University's reinstatement of Christina into the Program." (*Am. Compl.*, ¶ 309). Because the court has determined that Ms. Rossi has met her burden of plausibly alleging that she was deprived of due process in violation of a clearly established constitutional right, it is plausible for the court to find that she is likely to succeed on the merits of her underlying claims and be entitled to injunctive relief. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *see also Harrison v. Morton*, 490 Fed. Appx. 988, 995 (10th Cir. 2012) (stating that entitlement to an injunction requires demonstration that constitutional rights were actually violated). Defendants' motion to dismiss plaintiff's injunctive relief claims is therefore denied.

Ms. Rossi also seeks declaratory relief regarding "her rights respecting the November 22, 2013 letter" that "purported to contain a 'detailed plan for [her] to move forward toward receipt of the Ph.D. degree in Neuroscience." (*Am. Compl.*, ¶¶ 259, 270). The court agrees with

defendants that the Eleventh Amendment bars retrospective claims for declaratory relief against them in their official capacities. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). Defendants in their individual capacities cannot provide the equitable relief sought by Ms. Rossi's claim for declaratory relief. *See Constantino v. Mich. Dep't of State Police*, 707 F. Supp. 2d 724, 732 (W.D. Mich. 2010) (identifying that a declaratory relief claim against defendants in their individual capacities is improper when such declaratory relief can only be obtained from them in their official capacities). The court grants defendants' motion to dismiss Ms. Rossi's declaratory relief claim.

### V. Affirmative Link to Individual Faculty Defendants

Individuals are liable under 42 U.S.C. § 1983 only "based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). For a claim against an individual defendant to survive a motion to dismiss, the complaint must plausibly allege an "affirmative link" between a defendant's personal participation and the alleged constitutional violation. *Auvaa v. City of Taylorsville*, 506 F. Supp. 2d 903, 909 (D. Utah 2007) (quoting *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1157 (10th Cir. 2001)). Defendants have moved to dismiss Dr. Greger, Dr. Eckstrand, Dr. Botkin, and Dr. White for failure to allege an affirmative link.

#### A. Dr. Greger

Dr. Greger now lives in Arizona and was formerly a faculty member at the University of Utah, a former program faculty member, and a former member of Ms. Rossi's dissertation committee. (*Am. Compl.*, ¶ 7). Other than allegations that he heard Dr. Dudek's complaints about her and voted to dismiss her from the program, Ms. Rossi has not alleged facts against Dr.

14

Greger that rise to anything more than passive involvement in a violation of her due process rights. The allegations effectively support only that Dr. Greger "rubber-stamped" the dismissal decision; his supervisory status as a committee member alone is not enough to affirmatively link him to a constitutional violation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Accordingly, the court dismisses Dr. Greger in his individual capacity and, because he is no longer employed by the University of Utah such that any award of injunctive relief regarding re-enrollment in the program will apply to him, the court also dismisses Dr. Greger in his official capacity.

### B. Dr. Ekstrand

Dr. Ekstrand is a University faculty member, program director, former member of Ms. Rossi's dissertation committee, and formerly Ms. Rossi's independent conflict of interest manager/reviewer. (*Am. Compl.*, ¶ 6). The Amended Complaint does not allege that Dr. Ekstrand ever received notice of the conflict of interest affecting Ms. Rossi's data and dissertation, nor any request to independently review her data or conflict of interest issues. As a former dissertation committee member, the allegations against him also effectively support only that he "rubber-stamped" the dismissal decision against Ms. Rossi. For the same reasons the court dismisses Dr. Greger in his individual capacity, the court dismisses Dr. Ekstrand in his individual capacity. Dr. Ekstrand is not dismissed in his official capacity, however, because he is a still a faculty member to whom injunctive relief may apply.

### C. Dr. Botkin

Dr. Botkin is a University faculty member, the University's VP for Research Integrity, and the University's Research Integrity Officer. (*Am. Compl.*, ¶ 8). Ms. Rossi alleges that after

15

Dr. Botkin received demands from Dr. Dudek to investigate her dissertation work for "falsification," he conducted an investigation that ultimately did not find that she engaged in misconduct that met the definition of "research misconduct" per University Policy 7-001. (*Am. Compl.*, ¶¶ 198-226). Ms. Rossi also alleges that Dr. Botkin failed to follow Policy 7-001's requirements to establish an ad hoc misconduct inquiry committee and chairperson, to notify her of the falsification allegations and the composition of the committee, and to restore her reputation when the allegations of misconduct were not confirmed. (*Id.*). The court agrees with defendants that "failure to adhere to administrative regulations" does not necessarily "equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993). Nevertheless, the court finds that Ms. Rossi has plausibly alleged a sufficient affirmative link between Dr. Botkin's failure to restore her reputation and the constitutional violations surrounding her dismissal because the court finds that it is reasonable to infer from the complaint that had Dr. Botkin taken steps to restore Ms. Rossi's reputation to her dissertation committee members prior to their vote to dismiss her from the program, those members may have evaluated Dr. Dudek's academic and character representations about Ms. Rossi in a different light. The court therefore denies defendants' motion to dismiss Dr. Botkin in his individual capacity. Because reputation restoration may also be required as part of any injunctive relief ordered, the court also denies defendants' motion to dismiss Dr. Botkin in his official capacity.

### D. Dr. White

Dr. White is a University faculty member, program faculty member, and a former member of Ms. Rossi's dissertation committee. (*Am. Compl.*, ¶ 5). Ms. Rossi's factual allegations against Dr. White suggest substantially more personal involvement with Ms. Rossi

during the period in which Dr. Dudek's conflicts of interest were impacting the completion of Ms. Rossi's academic and research program. Also plausibly alleged is that based on Dr. Dudek's representations to him, Dr. White personally influenced other dissertation committee members to follow his vote against Ms. Rossi on "character" grounds. As a result, a sufficient affirmative link has been alleged and the court denies defendants' motion to dismiss Dr. White in either his individual capacity or his official capacity.

### VI. Defamation Claims Against Dr. Dudek in His Individual Capacity

Defendants argue that the Utah Governmental Immunity Act bars this court from hearing the state law defamation claim against Dr. Dudek, noting that the Act does not waive immunity for "any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment" arising from, among others, "libel, slander, deceit" and "misrepresentation." U.C.A. § 63G-7-201(4)(b), (f). They further assert that Utah district courts have previously applied such immunity to dismiss common law defamation claims. *Devlin v. Smalley*, 4 F. Supp. 2d 1315, 1324 (D. Utah 1998); *Kojima v. Lehi City*, No. 2:13-cv-000755, 2015 WL 4276399, at *8-9 (D. Utah July 14, 2015). In light of Ms. Rossi's plausible factual allegations that Dr. Dudek engaged in willful misconduct related to his conflict of interest, defendants' reliance on the Utah Governmental Immunity Act is misplaced and cannot support dismissal of this claim. The Act specifically waives immunity for a governmental actor who injures another due to "fraud or willful misconduct." U.C.A. § 63G-7-202(3)(c)(i) ("A plaintiff may not bring or pursue any civil action or proceeding based upon the same subject matter against the employee . . . whose act or omission gave rise to the claim, unless . . . the employee acted or failed to act through fraud or willful misconduct.").

17

Alternatively, defendants argue that the court should decline to exercise supplemental jurisdiction over this claim. Because there is a "common nucleus of operative fact" between this claim and Ms. Rossi's § 1983 claims involving Dr. Dudek's conflict of interest, the court finds that this claim arises out of the "same case or controversy" and that it is in the interest of fairness, convenience, and judicial economy for the court to exercise supplemental jurisdiction over the defamation claims. *See Estate of Harshman v. Jackson Hole Mt. Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).

### VII.     Breach of Fiduciary Duty

Plaintiff's complaint alleges the elements of a "fiduciary relationship" between Ms. Rossi and Dr. Dudek, but at oral argument she acknowledged that the imposition of a fiduciary duty by a professor or mentor toward a graduate student has never been imposed by Utah statutory or case law. Other courts that have considered whether such a fiduciary duty exists between a professor or mentor toward a graduate student have found none, largely because of competing and/or conflicting obligations to the university or others that prevent them from being legally bound to act solely for the student's benefit. *See Swenson v. Bender*, 764 N.W.2d 596, 602 (Minn. Ct. App. 2009); *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014). Even if plaintiff is correct that the court is not precluded from considering this claim under the Utah Governmental Immunity Act, the court is not inclined to exercise supplemental jurisdiction over it. Because the state court must necessarily hear Ms. Rossi's other state law claims against the University arising out of the same factual nucleus; the court believes that making new law in this area is a function better suited to the state court. Consequently, the court dismisses this claim.

## CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part defendants' Motion to Dismiss the University of Utah and the Faculty Defendants in their Official Capacity [Dkt. No. 28], and defendants' Motion to Dismiss Faculty Defendants in their Individual Capacities [Dkt. No. 33] as follows: The University of Utah is dismissed without prejudice. Ms. Rossi's declaratory relief claim is dismissed without prejudice. Defendants Dr. Greger and Dr. Ekstrand are dismissed in their individual capacities. Defendant Dr. Greger is also dismissed in his official capacity. The breach of fiduciary duty claim against the University and Dr. Dudek is dismissed without prejudice. Ms. Rossi may proceed with all other claims against the remaining defendants.

DATED this 24th day of June, 2016.

BY THE COURT:

Clark Waddoups
United States District Judge